UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MINNESOTA

| | |
|---|---|
| ACE AMERICAN INSURANCE COMPANY as subrogee of Hippo Technologies, LLC, Blue Ridge Orthopedic Associates, P.C. d/b/a Blue Ridge Orthopedic and Spine Center, KeyMed, Inc., Gockerman Brothers Holdings, LLC, Great Lakes Pathologists, SC, and Quicksilver Topco, LLC and WESTCHESTER SURPLUS LINES INSURANCE COMPANY as subrogee of Rotech Healthcare, Inc.<br><br>                     Plaintiffs,<br><br>vs.<br><br>UNITEDHEALTH GROUP INCORPORATED, UNITED HEALTHCARESERVICES, INC., OPTUM INSIGHT, CHANGE HEALTHCARE, INC., CHANGE HEALTHCARE OPERATIONS, LLC, CHANGE HEALTHCARE SOLUTIONS, LLC, CHANGE HEALTHCARE HOLDINGS, INC., CHANGE HEALTHCARE TECHNOLOGIES, LLC, CHANGE HEALTHCARE PHARMACY SOLUTIONS, LLC, OPTUM, INC., OPTUM FINANCIAL, INC., OPTUM BANK, and OPTUM PAY,<br><br>                     Defendants. | Case No. 0:25-cv-666<br><br>**COMPLAINT** |

Plaintiffs Ace American Insurance Company ("Ace American") as subrogee of Hippo Technologies, LLC, Blue Ridge Orthopedic Associates, P.C. d/b/a Blue Ridge Orthopedic and Spine Center, KeyMed, Inc., Gockerman Brothers Holdings, LLC, Great Lakes Pathologists, SC, and Quicksilver Topco, LLC and Westchester Surplus Lines Insurance Company as subrogee of

1

Rotech Healthcare, Inc. (hereinafter "Plaintiffs") by and through its undersigned counsel, Cozen O'Connor, for its complaint herein, allege the following upon information and belief.

## INTRODUCTION

1. Defendants operated or controlled a health technology company that provides revenue and payment cycle management services.

2. The system connects payers, providers, pharmacies and patients.

3. Defendants' system processes billions of healthcare transactions annually and it retains vast amounts of data that includes personal, medical and financial information.

4. Defendants' system was breached and a ransomware group encrypted and stole information controlled by Defendants.

5. As a result of the data breach, Plaintiffs' Insureds suffered covered losses for which Plaintiffs compensated their Insureds pursuant to the aforementioned policies.

## PARTIES

6. Plaintiff Ace American Insurance Company ("Ace American") is an insurer organized under the laws of Pennsylvania with its principal place of business located in Pennsylvania.

7. At all times material to this Complaint, Ace American was authorized to issue insurance policies throughout the United States.

8. Ace American issued Policy Number D96327493 to Gockerman Brothers Holdings, LLC ("Gockerman") and is subrogated to the extent of its payments to Gockerman.

9. Ace American issued Policy Number D97223701 to Blue Ridge Orthopedic and Spine Center ("Blue Ridge") and is subrogated to the extent of its payments to Blue Ridge.

10. Ace American issued Policy Number D95164122 to Hippo Technologies, LLC

2

("Hippo") and is subrogated to the extent of its payments to Hippo.

11. Ace American issued Policy Number D9403093A to Great Lakes Pathologists, SC ("Great Lakes") and is subrogated to the extent of its payments to Great Lakes.

12. Ace American issued Policy Number D01826840 to KeyMed, Inc. ("KeyMed") and is subrogated to the extent of its payments to KeyMed.

13. Ace American issued Policy Number D95312445 to Quicksilver Topco, LLC ("Quicksilver") and is subrogated to the extent of its payments to Quicksilver.

14. At all times relevant to this Complaint, Westchester Surplus Lines Insurance Company ("Westchester") is an insurer organized under the laws of Georgia with its principal place of business located in Pennsylvania.

15. At all times material to this Complaint, Westchester was authorized to issue insurance policies throughout the United States.

16. Plaintiff Westchester issued Policy Number F16060264 to Rotech Healthcare, Inc. ("Rotech") and is subrogated to the extent of its payments to Rotech.

17. Defendant UnitedHealth Group Incorporated ("UHG") is a Delaware corporation with its principal place of business in Minnetonka, Minnesota, and is registered to do business in the State of Minnesota.

18. UHG is a healthcare company with subsidiaries in health insurance and healthcare services businesses. UHG maintains control over the Change system discussed herein.

19. Defendant UnitedHealthCare Services, Inc. ("UHCS") is a direct subsidiary of UHG and maintains its principal place of business in Minnetonka, Minnesota, and is incorporated and registered to do business in Minnesota. UHCS is the parent to UHG's insurance business and healthcare services business operated under the Optum brand.

20. Defendant Optum Insight, Inc. is a direct subsidiary of UHCS. It is incorporated in Delaware, and has its principal place of business in Eden Prairie, Minnesota. Optum Insight is registered to do business in Minnesota.

21. Defendant Change Healthcare Inc. ("Change Healthcare") is a subsidiary of UHG, and is incorporated in Delaware, with its principal place of business in Nashville, Tennessee. Change Healthcare is now operated as part of Optum Insight and maintained the Change Platform at all relevant times.

22. Defendant Change Healthcare Operations, LLC ("CHO") is a subsidiary of Change Healthcare. CHO is incorporated in Delaware, with its principal place of business in Nashville, Tennessee. CHO is a contracting entity for Change Healthcare.

23. Defendant Change Healthcare Solutions, LLC ("CHS") is a subsidiary of or "managed" by CHO. It is incorporated in Delaware, has its principal place of business in Nashville, Tennessee, and is registered to do business in Minnesota.

24. Defendant Change Healthcare Holdings, Inc. ("CHH") is a subsidiary of Change Healthcare. CHH is incorporated in Delaware, with its principal place of business in Nashville, Tennessee.

25. Defendant Change Healthcare Technologies, LLC ("CHT") is a subsidiary of, or "managed" by, CHH. CHT is incorporated in Delaware, and is registered to do business in Minnesota.

26. Defendant Change Healthcare Pharmacy Solutions, Inc. ("CHPS") is a subsidiary of Change Healthcare. CHPS is incorporated in Maine, with a principal place of business in Nashville, Tennessee. CHPS is registered to do business in Minnesota.

27. Defendant Optum, Inc. is a subsidiary of UHCS. It is incorporated in Delaware. Optum, Inc. has its principal place of business in Eden Prairie, Minnesota, and is registered to do business in Minnesota.

28. Defendant Optum Financial, Inc. is a subsidiary of Optum, Inc. It is incorporated in Delaware, with a principal place of business in Eden Prairie, Minnesota. Optum Financial is registered to do business in Minnesota.

29. Defendant Optum Bank is a subsidiary of Optum Financial. It is incorporated, and has its principal place of business in, Utah.

30. Defendant Optum Pay operates under Optum Financial, Inc. as a financial services platform.

31. Change Healthcare, CHO, CHS, CHH, CHT, and CHPS together, referred to as "Change."

32. Change, with UHG, UHCS, and Optum Insight, the "Change Health Defendants."

## JURISDICTION AND VENUE

33. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. 1332 as the parties are residents of different states and the amount in controversy exceeds $75,000.

   a. Plaintiffs are citizens of Pennsylvania and Georgia since Ace American is organized under the laws of Pennsylvania and has its principal place of business in Pennsylvania and Westchester is organized under the laws of Georgia and has its principal place of business in Pennsylvania.

   b. Change and Change Health Defendants are citizens of the following states:

      (i) Minnesota (UHCS);

      (ii) Delaware and Minnesota (UHG, Optum Insight, Inc., Optum, Inc., Optum Financial, CHT)

5

(iii) Delaware and Tennessee (Change Healthcare, CHO, CHS, CHH, CHPS)

34. On June 7, 2024, the Judicial Panel on Multidistrict Litigation issued an order centralizing litigation arising from the Ransomware Attack in this District. MDL Pretrial Order No. 1 (ECF 54) allows Plaintiffs to directly file this case in the MDL docket.

35. Venue is proper pursuant to 28 U.S.C. 1391 Defendants UHG, UHCS, Optum, Inc., Optum Financial, Optum Insight, and CHT reside in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## THE CHANGE PLATFORM

36. The Change Health Defendants control the largest healthcare payment platform in United States (the "Change Platform"), providing, among other things, a claims processing service that is used by healthcare providers and pharmacies ("Providers") to submit claims to insurance companies and receive reimbursement for services performed (the "Services").

37. To operate the Change Platform, Change Health Defendants transact in and store huge volumes of confidential information including highly sensitive and confidential patient information including full names, phone numbers, addresses, Social Security Numbers, emails, and payment information, referred to "Personally Identifying Information" or "PII."

38. Change Health Defendants also store patients' medical records, claims information, provider information, diagnoses, medicines, test results, images, care and treatment, and billing, claims and payment information including health insurance information (such as health plans and policies, insurance companies, member and group ID numbers, and Medicaid-Medicare-government payer ID numbers)—collectively known as "Private Health Information" or "PHI."

39. PII and PHI together are referred to as "Private Information."

## THE RANSOMWARE ATTACK

6

40. On information and belief, on February 12, 2024, the username and password for a low-level, customer support employee's access to Change's Citrix portal were posted in a Telegram group chat that advertises the sale of stolen credentials. The account was a basic, user-level account: it only had access to specific applications and did not itself have administrator access or credentials. However, the compromised account had the authority to create accounts with administrative privileges.

41. On information and belief, on February 12, 2024, a hacking group known as BlackCat and its affiliates used the compromised credentials to remotely access Change's portal, thus gaining entry to the basic, user-level account.

42. On information and belief, since Change's portal did not have multi-factor authentication, the hacking group was able to gain access to Change's networks with the compromised credentials.

43. On information and belief, using the initial compromised account, the hacking group was able to break into the server that hosted Change's medication management application.

44. On information and belief, change Health Defendants did not detect the hack at that time.

45. On information and belief, the hacking group then created additional accounts that allowed it to access Change Health Defendants' critical IT infrastructure without being detected by the Change Health Defendants.

46. On information and belief, the hacking group was able to access and download Private Information of a vast number of Change Health Defendants' clients' information.

47. On information and belief, on February 21, 2024, the hacking group revealed to the Change Health Defendants that it had accessed the Private Information and deployed ransomware

on the computer system that would only allow the Change Health Defendants to access the information with the cooperation of the hacking group.

48. On information and belief, upon learning of the ransomware attack, the Change Health Defendants severed connectivity with data centers, which rendered the Change Platform inoperable.

49. Change Health Defendants' decision to shut down the Change Platform caused Providers to experience loss or delay of months' worth of income, and forced Providers to divert resources from their ordinary operations, including patient care.

### CHANGE HEALTH DEFENDANTS HAD A DUTY PROTECT PRIVATE INFORMATION

50. Change Health Defendants are governed by HIPAA (*see* 45 C.F.R. § 160.102, et seq.).

51. HIPAA required the Change Health Defendants to implement security measures to secure and safeguard "protected health information."

52. Change further represented in its contracts that it would protect sensitive patient data.

### SUBROGATION CLAIMS

53. At all times material to this Complaint, Plaintiff Ace American provided cyber insurance coverage to Gockerman, Blue Ridge, Hippo, Great Lakes, KeyMed, and Quicksilver and Plaintiff Westchester provided cyber insurance coverage to Rotech (the "Insureds") pursuant to the Policies identified above.

54. Pursuant to the terms of the subject Policies identified above, and otherwise by operation of law, Plaintiffs are contractually, legally, and equitably subrogated, to the extent of its payments, to the Insureds' rights against Defendants to recover for the amounts paid as a result

of the loss, as well as to pursue any uninsured losses suffered by the Insureds by virtue of an assignment of such claims, if any.

## COUNT I – NEGLIGENCE

55. Plaintiffs incorporate each of the preceding paragraphs and allegations by reference as though fully set forth at length herein.

56. At all times material to this Complaint, the Change Health Defendants set up, operated, maintained, and controlled from a network, equipment and systems ("Systems") used to operate the Change Platform.

57. The losses and damages sustained by Plaintiffs and the Insureds were caused by the negligence, gross negligence, carelessness, recklessness, and/or negligent acts and/or omissions of Change Health Defendants, their agents, servants, and/or employees acting within the scope of their employment.

58. Change Health Defendants owed legal and equitable duties to its customers, including the Insureds, including a duty to adequately design, maintain, and update its Change Platform, as well as a duty to promptly detect, repair, and notify of any critical vulnerabilities in the Change Platform.

59. Change Health Defendants failed to use the degree of care which a reasonably prudent company would use in designing, maintaining, and utilizing security measures to protect Private Information.

60. Change Health Defendants' negligent acts and omissions, *inter alia*, include, but are not limited to the following:

    a. Failure to use and implement security systems, protocols, and practices that were sufficient to protect the System against reasonably foreseeable ransomware attacks;

    b. Failure to use and implement systems, protocols, and practices with

9

   redundancies and contingencies that were sufficient to ensure the continuity of the Change Platform;

 c. Failure to use and implement security measures that complied with regulatory requirements and industry standard for security Private Information and healthcare data;

 d. Failing to comply with Defendants' security promises and procedures;

 e. Failing to monitor the security of the System;

 f. Failing to update security procedures to comply with industry standards for maintaining Private Information and healthcare information;

 g. Failure to enforce best practice password and account policies;

 h. Failure to deny unnecessary internet access;

 i. Failure to block or restrict internet or intranet access for database systems;

 j. Failure to implement firewall rules to block or restrict internet and intranet access or implement firewall rules to block known malicious IP addresses; and

 k. Failure to prevent outside actors from setting up accounts and accessing Private Information and healthcare information.

61. Change Health Defendants were further negligent in failing to timely detect and remedy the vulnerabilities in its System and to timely restore its System.

62. A data breach is a foreseeable consequence of failure to adequately design and maintain the System.

63. The highly public nature of other ransomware attacks and similar breaches placed Change Health Defendants on notice of the foreseeable consequences to its clients of its failure to adequately design and maintain its System.

64. Despite adequate notice of the risks associated with its failure to adequately design, maintain, and proactively protect its System, Change Health Defendants failed to ensure the security of its Platform and ultimately the security of its customers' confidential information,

10

including that of the Insureds.

65. As a direct and proximate consequence Change Health Defendants' misconduct, acts, and omissions, Plaintiffs and the Insureds have experienced direct monetary damages including but not limited to costs associated with lost revenue, claim processing expenditures, and legal fees associated with incident response and regulatory concerns.

66. But for Change Health Defendants' negligent, grossly negligent, and/or reckless conduct, Plaintiffs and the Insureds would not have experienced these current and future damages.

67. Pursuant to the terms and conditions of its cyber insurance Policies, Plaintiffs have paid and will continue to pay funds to or on behalf of the Insureds in an amount to be proven at trial.

68. Pursuant to the terms of the subject cyber insurance Policies, and otherwise by operation of law, Plaintiffs are contractually, legally, and equitably subrogated, and have further been assigned the Insureds' rights, if any, against Change Health Defendants to recover damages incurred as a result of the ransomware attack.

## COUNT II – GROSS NEGLIGENCE

69. Plaintiffs incorporate each of the preceding paragraphs and allegations by reference as though fully set forth at length herein.

70. At all times material to this Complaint, the Change Health Defendants set up, operated, maintained, and controlled from a network, equipment and systems ("Systems") used to operate the Change Platform.

71. The losses and damages sustained by Plaintiffs and the Insureds were caused by the gross negligence, carelessness, and reckless acts and/or omissions of Change Health Defendants, their agents, servants, and/or employees acting within the scope of their employment.

72. Change Health Defendants owed legal and equitable duties to its customers, including the Insureds, including a duty to adequately design, maintain, and update its Change Platform, as well as a duty to promptly detect, repair, and notify of any critical vulnerabilities in the Change Platform.

73. Change Health Defendants failed to use the degree of care which a reasonably prudent company would use in designing, maintaining, and utilizing security measures to protect Private Information.

74. Change Health Defendants acted with willful disregard for the security of the Private Information.

75. Change Health Defendants' grossly negligent acts and omissions, *inter alia*, include, but are not limited to the following:

   a. Failure to use and implement security systems, protocols, and practices that were sufficient to protect the System against reasonably foreseeable ransomware attacks;

   b. Failure to use and implement systems, protocols, and practices with redundancies and contingencies that were sufficient to ensure the continuity of the Change Platform;

   c. Failure to use and implement security measures that complied with regulatory requirements and industry standard for security Private Information and healthcare data;

   d. Failing to comply with Defendants' security promises and procedures;

   e. Failing to monitor the security of the System;

   f. Failing to update security procedures to comply with industry standards for maintaining Private Information and healthcare information;

   g. Failure to enforce best practice password and account policies;

   h. Failure to deny unnecessary internet access;

   i. Failure to block or restrict internet or intranet access for database systems;

   j. Failure to implement firewall rules to block or restrict internet and intranet access

12

or implement firewall rules to block known malicious IP addresses; and

k. Failure to prevent outside actors from setting up accounts and accessing Private Information and healthcare information.

76. Change Health Defendants were further grossly negligent in failing to timely detect and remedy the vulnerabilities in its System and to timely restore its System.

77. A data breach is a foreseeable consequence of failure to adequately design and maintain the System.

78. The highly public nature of other ransomware attacks and similar breaches placed Change Health Defendants on notice of the foreseeable consequences to its clients of its failure to adequately design and maintain its System.

79. Despite adequate notice of the risks associated with its failure to adequately design, maintain, and proactively protect its System, Change Health Defendants failed to ensure the security of its Platform and ultimately the security of its customers' confidential information, including that of the Insureds.

80. As a direct and proximate consequence Change Health Defendants' misconduct, acts, and omissions, Plaintiffs and the Insureds have experienced direct monetary damages including but not limited to costs associated with lost revenue, claim processing expenditures, and legal fees associated with incident response and regulatory concerns.

81. But for Change Health Defendants' grossly negligent and/or reckless conduct, Plaintiffs and the Insureds would not have experienced these current and future damages.

82. Pursuant to the terms and conditions of its cyber insurance Policies, Plaintiffs have paid and will continue to pay funds to or on behalf of the Insureds in an amount to be proven at trial.

83. Pursuant to the terms of the subject cyber insurance Policies, and otherwise by

operation of law, Plaintiffs are contractually, legally, and equitably subrogated, and has further been assigned the Insureds' rights, if any, against Change Health Defendants to recover damages incurred as a result of the ransomware attack.

## **COUNT III – NEGLIGENCE PER SE**

84. Plaintiffs incorporate each of the preceding paragraphs and allegations by reference as though fully set forth at length herein.

85. At all times material to this Complaint, Change Health Defendants had a duty to comply with applicable statutes and regulations, including Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1) and HIPAA Privacy Rule ("Standards for Privacy of Individually Identifiable Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and E, and the HIPAA Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C (collectively, "HIPAA Privacy and Security Rules").

86. Section 5 of the FTC prohibits "unfair . . . practices in or affecting commerce." The FTC has interpreted Section 5 to include as an unfair act or practice the failure by a business to employ reasonable security measures to secure access to their paid-for systems, despite representing otherwise.

87. The HIPAA Privacy and Security Rules require, *inter alia*, that Change Health Defendants maintain adequate data security systems to reduce the risk of data breaches and cyberattacks, adequately protect the PHI of patients, and ensure the confidentiality and integrity of electronically protected health information created, received, maintained, or transmitted. *See, e.g.*, 45 C.F.R. § 164.306(a)(1).

88. Change Health Defendants violated Section 5 of the FTCA and HIPAA Privacy

and Security Rules by failing to use reasonable security measures to secure access to their paid-for Change Platform, despite representing otherwise, including by not complying with applicable industry standards

89.     Change Health Defendants' failure to secure the data led to the foreseeable consequence of a ransomware attack.

90.     Change Health Defendants' failure to secure the data led to Plaintiffs' insureds inability to access the Change Platform, which caused Plaintiffs' Insureds to suffer damages.

91.     Defendants' violation of Section 5 of the FTCA and the HIPAA Privacy and Security Rules constitutes negligence per se.

92.     Plaintiffs' Insureds are within the class of persons that Section 5 of the FTCA and HIPAA Privacy and Security Rules were intended to protect.

93.     The harm suffered by Plaintiffs' Insureds is the type of harm that Section 5 of the FTCA and HIPAA Privacy and Security Rules were intended to guard against.

94.     It was reasonably foreseeable to Change Health Defendants that their failure to exercise reasonable care in securing the System would result in harm to Plaintiffs' Insureds due to not being able to timely submit claims for and not receiving timely payments for their healthcare services.

95.     The injury and harm that Plaintiffs and their Insureds suffered was the direct and proximate result of Change Health Defendants' violation of Section 5 of FTCA and HIPAA Privacy and Security Rules.

96.     But for Change Health Defendants' negligence per se, Plaintiffs and the Insureds would not have experienced these current and future damages.

97.     Pursuant to the terms and conditions of its cyber insurance policies, Plaintiffs have

paid and will continue to pay funds to or on behalf of the Insureds in an amount to be proven at trial.

98. Pursuant to the terms of the subject cyber insurance policies, and otherwise by operation of law, Plaintiffs are contractually, legally, and equitably subrogated, and has further been assigned the Insureds' rights against Change Health Defendants to recover damages incurred as a result of the ransomware attack

## COUNT IV – BREACH OF CONTRACT

99. Plaintiffs incorporate each of the preceding paragraphs and allegations by reference as though fully set forth at length herein.

100. Pursuant to the regulatory legislation and its contracts with providers, including the Insureds, Change Health Defendants were obligated to treat all information received by its customers, including the Insureds, as Private Information.

101. Change Health Defendants further agreed to use reasonable care and discretion to avoid disclosure of such Private Information.

102. By failing to employ reasonable industry standards related to security of its System, Change Health Defendants failed to use reasonable care or employ a reasonable industry standard of care for materials containing PII and PHI.

103. Change Health Defendants' failure to employ reasonable care and discretion and/or employ a reasonable industry standard of care includes, but is not limited to:

   a. Failure to use and implement security systems, protocols, and practices that were sufficient to protect the System against reasonably foreseeable ransomware attacks;

   b. Failure to use and implement systems, protocols, and practices with redundancies and contingencies that were sufficient to ensure the continuity of the Change Platform;

    c. Failure to use and implement security measures that complied with regulatory requirements and industry standard for security Private Information and healthcare data;

    d. Failing to comply with Defendants' security promises and procedures;

    e. Failing to monitor the security of the System;

    f. Failing to update security procedures to comply with industry standards for maintaining Private Information and healthcare information;

    g. Failure to enforce best practice password and account policies;

    h. Failure to deny unnecessary internet access;

    i. Failure to block or restrict internet or intranet access for database systems;

    j. Failure to implement firewall rules to block or restrict internet and intranet access or implement firewall rules to block known malicious IP addresses; and

    k. Failure to prevent outside actors from setting up accounts and accessing Private Information and healthcare information.

104. Accordingly, Change Health Defendants breached its contractual obligation to ensure confidentiality of Private Information belonging to the Insureds.

105. As a direct and proximate consequence Change Health Defendants' breach of the contracts with the Insureds, Plaintiff sand the Insureds have experienced direct monetary damages including but not limited to costs associated with lost revenue, claim processing expenditures, and legal fees associated with incident response and regulatory concerns.

106. But for Change Health Defendants' breach of its contracts with the Insureds, Plaintiffs and the Insureds would not have experienced these current and future damages.

107. Pursuant to the terms and conditions of its cyber insurance policies, Plaintiffs have paid and will continue to pay funds to or on behalf of the Insureds in an amount to be proven at trial.

### COUNT V – UNJUST ENRICHMENT

108. Plaintiffs incorporate each of the preceding paragraphs and allegations by reference as though fully set forth at length herein.

109. This Count is pleaded in the alternative to the Breach of Contract count (Count III) pleaded herein.

110. Plaintiffs' Insureds provided benefits to Change Health Defendants, both directly and indirectly, in the form of payments for the Services using the Change Platform and in providing health services to patients insured by UHG.

111. Change Health Defendants had knowledge of the benefits described above and retained such benefits.

112. By accepting the benefits described above, the Change Health Defendants should have used, in part, the monies paid to them to pay the costs of industry-standard cybersecurity and redundancy to allow the Change Health Defendants to keep the Change Platform in operation in the event of a ransomware attack.

113. By failing to keep the Change Platform operational after accepting the benefits described above, the Change Health Defendants were unjustly enriched.

114. Under the common law doctrine of unjust enrichment, it is inequitable for Change Health Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the Insureds in an unfair and unconscionable manner.

115. Plaintiffs as subrogees of the Insureds are entitled to full refunds, restitution, and/or damages from Change Health Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Change Health Defendants from their wrongful conduct. This can be accomplished by establishing a constructive trust from which Plaintiffs and the Insureds can seek restitution or compensation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Ace American Insurance Company a/s/o Gockerman Brothers Holdings, LLC, Ace American Insurance Company a/s/o Blue Ridge Orthopedic Associates, P.C. d/b/a Blue Ridge Orthopedic and Spine Center, Ace American Insurance Company a/s/o Hippo Technologies, LLC, Ace American Insurance Company a/s/o Great Lakes Pathologists, SC, Ace American Insurance Company a/s/o KeyMed, Inc., Ace American Insurance Company a/s/o Quicksilver Topco, LLC, and Westchester Surplus Lines Insurance Company a/s/o Rotech Healthcare, Inc. respectfully demand judgment be entered in their favor and against Defendants Unitedhealth Group Incorporated, Unitedhealthcareservices, Inc., Optum Insight, Change Healthcare, Inc. Change Healthcare Operations, LLC, Change Healthcare Solutions, LLC, Change Healthcare Holdings, Inc., Change Healthcare Technologies, LLC, Change Healthcare Pharmacy Solutions, LLC, Optum, Inc., Optum Financial, Inc., Optum Bank, and Optum Pay for:

1) money damages in an amount to be proven at trial
2) a declaration by this Court that, in the event of any judgment against the Insureds in favor of Plaintiffs, that:
    a) Defendants are liable to Plaintiffs;
    b) Defendants are liable to the Insureds by common law indemnity; and
    c) Defendants are liable to the Insureds by way of contribution
3) reasonable costs and attorneys' fees;
4) Pre- and post-judgment interest; and,
5) Any such further relief as this Honorable Court deems just and proper.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury.

Dated: February 20, 2025

For the Plaintiffs,

   /s/ Jonathan Levy
Jonathan Levy
Joshua J. Whiteside
(*pro hac vice pending*)
**COZEN O'CONNOR**
123 South Wacker Drive
Suite 1800
Chicago, IL 60606
(312) 382-3100 (T)
(312) 382-8910 (F)
jlevy@cozen.com
jwhiteside@cozen.com